## KEITH UNDERHILL v. STATE.

No. A-2790.    Opinion Filed February 4, 1919.

(177 Pac. 929.)

1.  **OBSTRUCTING JUSTICE—Prosecution—Conviction.** To sustain a prosecution under section 2258, Rev. Laws 1910, for the suppression of evidence in the nature of a written instrument, such instrument must be an instrument which can be legally used as evidence, as alleged in the information.

2.  **SAME—Sufficiency of Evidence.** The evidence in this case carefully considered, and found insufficient to support the conviction of the plaintiff in error.

*Appeal from County Court, Pontotoc County;*
*I. M. King, Judge.*

Keith Underhill was convicted of suppressing evidence, and he appeals.    Reversed with instructions to dismiss prosecution.

*Crawford & Bolen,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.    The plaintiff in error, Keith Underhill, was by information, with one Houston Dumas, jointly informed against and convicted of the offense of suppressing evidence, and each was sentenced to imprisonment in the county jail for six months and to pay a fine of $100 and costs.    To reverse the judgment rendered, defendant Keith Underhill prosecutes this appeal.    There was no appeal by defendant Dumas.

This is a prosecution under section 2258, Rev. Laws 1910, which reads as follows:

"Any person who maliciously practices any deceit or fraud, or uses any threat, menace or violence, with intent

to prevent any party to an action or proceeding from obtaining or producing therein any book, paper or other matter or thing which might be evidence, or from procuring the attendance or testimony of any witness therein, or with intent to prevent any person having in his possession any book, paper or other matter or thing which might be evidence in such suit or proceeding, or prevent any person being cognizant of any fact material thereto from producing or disclosing the same, is guilty of a misdemeanor."

The evidence tends to show that J. H. Dumas feloniously took from the office of the county attorney a sworn written statement made by him (Dumas), which he had previously delivered to the said county attorney, and which said statement is as follows:

"COUNTY OF PONTOTOC,

"ADA, OKLAHOMA.

"McDonald 2 Heifer yearling calves.

"Some time after Dick Aycock quit working for me he came to my house and got Loyd Robinson, they went and got two white yearlings and brought them to my place—he said to me, here is two yearlings I want to sell them. He also said I got them down south of here. He said that he had picked them up. He gave me the impression and I understood that he had stolen them. He said that he would see that they were alright. That if anything came up he would take it. That he would go with me to Hickory and help me ship them. The next morning he came over and helped me carry them over to Keith Underhill's. I had some cattle over there that I had for from Keith that I was going to ship. I paid him $35.00 there (check), after I got over to Keith's we talked together. Dick told us all that he had got them down south of there in a pasture. I didn't know whose they were. Keith spoke up and says. it won't do to ship these calves, you will get caught with them. He said if you will swap them to me, I will take care of them, they

won't expect to find them here with my bunch. Keith says papa has a calf he wants to trade and he says I will swap one of these calves for his and no body will notice this calf being there with his white face cattle.

"Keith then swapped me a little white faced calf for the other one and he gave me his father's calf for the other. He then made the remark that they wouldn't ever be noticed there, being one at his father's and one at his place. These I understand were McDonald calves, and were afterwards found by him. I shipped the other two with my stuff. I also shipped a calf the same day that I got from Dick that he said he had stolen from F. M. Snyder. This was a red heifer calf with white spits in his forehead. I paid him $12.50 for that with check.

"J. H. DUMAS.

"Sworn to before me.
"H. J. BROWN, J. P."

The evidence shows that, on the day after the sworn written statement was missed from the office of the county attorney, the said instrument was found in the possession of the defendant Keith Underhill, and that Dumas told the officer who found the paper on the person of defendant Underhill that he (Dumas) got the paper and gave it to Mr. Underhill. There was no evidence to show that the defendant Underhill advised or in any wise aided the defendant Dumas in abstracting the said paper from the office of the county attorney, and there is no evidence that there was any case pending against Dumas for larceny.

The defendant Underhill demurred to the evidence, and requested the court to direct the jury to render a verdict of acquittal as to him, for the reason that there was no legal evidence tending to connect him with the offense charged, which demurrer was overruled, and requested instructions for acquittal denied, and exceptions saved.

The gravamen of the offense charged was the suppression of legal evidence which was to be used in evidence on behalf of the state in the case of State of Oklahoma v. Houston Dumas, No. 838, District Court of Pontotoc County, Oklahoma, and, unless the paper which was taken from the office of the county attorney could be used as legal evidence in that case, the defendant Underhill could not be legally convicted of the offense charged in the information.

It is insisted on the part of the state that the paper abstracted was a confession voluntarily made of the offense charged in the said case, and hence legal evidence that could be used in that case. The information does not allege in any specific language the facts and circumstances constituting the offense with which Dumas was charged in case No. 838, in which it was charged the sworn statement was intended to be used. From the face of the information the court is unable to determine whether or not the sworn statement was material to the issues in that case, or would have been competent evidence therein. The record in this court shows that case No. 838 was a prosecution against Dumas for larceny of two calves, while the sworn statement in no way is a confession on the part of Dumas of the larceny of any property. The nearest it approaches to a confession at all is for the crime of receiving stolen property, and not larceny. This court has held in numerous decisions that the crimes of larceny and of receiving stolen property are two separate and distinct offenses. See *Ex parte Harris,* 8 Okla. Cr. 397, 128 Pac. 156. Hence it is apparent that the alleged confession, even if voluntarily made, could not have been admissible in a prosecution for larceny of live stock against Dumas, which is charged in case No. 838.

We are of the opinion that the evidence is insufficient to support the conviction of the defendant Keith Under-hill, as there is no evidence that the instrument abstracted from the office of the county attorney might be legal evi-dence in the case alleged in the information, and therefore the court committed reversible error in refusing to instruct the jury to acquit the defendant Underhill.

The judgment of the trial court as to Keith Underhill is reversed, with instructions to dismiss the prosecution as to him.

DOYLE, P. J., and MATSON, J., concur.