**Thomas Deshawn SWART, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. C–84–584.**

Court of Criminal Appeals of Oklahoma.

June 17, 1986.

Johnie O'Neal, Asst. Public Defender, Tulsa, Okl., for appellant.

Michael C. Turpen, Atty. Gen., Terry Jenks, Asst. Atty. General, Oklahoma City, for appellee.

Stephen C. Lewis, State Representative, Shawnee, James E. Hamilton, State Representative, Poteau, Don G. Pope, General Counsel, Okla. Dept. of Corrections, Oklahoma City, as Amici Curiae urging affirmance.

## OPINION

PARKS, Presiding Judge:

With this case, we are called upon to assess the constitutionality of the Oklahoma Intermediate Offender Act, currently codified at 22 O.S.Supp.1984, § 995 *et seq.* After oral argument, and upon consideration of the excellent briefs filed by appellant, the State of Oklahoma, and various *amicus curiae*, we determine the Act is unconstitutional.

On January 12, 1984, and January 17, 1984, the appellant, Thomas Deshawn Swart, was charged in the District Court of Tulsa County, Case No. CRF–84–114 and CRF–84–178, with the crimes of Attempted Burglary and Knowingly Concealing Stolen Property. On March 16, 1984, the appellant appeared for arraignment, and indicated his wish to plead guilty to a thirty

(30) month negotiated sentence. The trial judge, the Hon. Jay Dalton, though expressing doubts concerning the constitutionality of the Oklahoma Intermediate Offender Act [hereinafter referred to as the NIO Act, or the Act],[1] ruled the Act had application to appellant's cases, and that he would sentence the appellant accordingly. Appellant filed a petition for an extraordinary writ in this Court, which was denied. After denial by this Court, appellant, on June 8, 1984, entered his pleas of guilty to each offense. Despite the State's recommendation of a thirty (30) month determinate sentence on each offense, the trial court sentenced appellant to an indeterminate sentence with the Department of Corrections [herinafter referred to as the D.O.C.]. Appellant timely moved to withdraw his plea of guilty, citing the unconstitutionality of the NIO Act. After this motion was overruled, an appeal was perfected with this Court.

### I.

The NIO Act is an attempt by the Oklahoma Legislature to classify any person between the ages of eighteen and twenty-one, or a juvenile certified to stand trial as an adult, who has been convicted of a nonviolent offense, as a "nonviolent intermediate offender." 22 O.S.Supp.1984, § 995.-1. Upon a verdict of guilty, or a plea of

---

**1.** THE COURT: Well, of course, I've reviewed the Statutes, the Statute you referred to, and I have mixed emotions about the Statute.

First of all, I think it is a convoluted mess, to tell you the truth. I think it takes inherent power of the Court away from sentencing these defendants, and also, takes the jurors prerogative away to punish in these cases. It takes the citizens out of the punishment process and places it with the Department of Corrections.

In doing that, I think maybe this is in contravention with some of the other sentences we have, sentencing Statutes we have, and some of the other Statutes in the State of Oklahoma.

I feel there is a very good chance this Statute is unconstitutional, but I can't say that unequivocally. It would probably be better for a higher court to consider that aspect of it.

It appears to be mandatory on the Court, and I have a question about that even. I'm sure it can be cleared up by the Court of Criminal Appeals, some higher court.

It's, as I stated, again, one of the few Statutes since I've been in the criminal justice system no one likes. The State's attorneys don't like the Statute, the Defense attorneys don't like the Statute, and I haven't talked to any judge, personally, that likes the Statute.

I know what the intent, I assume—It is so convoluted it's hard to really define exactly what the thing does say.

Like I say, I have a question about the constitutionality of it. It takes away the inherent power of the jury to determine the punishment, takes away from the Court, and whenever these Statutes take away the right of the citizens, takes the citizen out of the criminal justice process, that bothers me. It certainly bothers me when that happens.

I do have a strong feeling about the possibility it could be unconstitutional.

(Tr. p. 3–4).

guilty or nolo contendere, a trial judge has two sentencing options regarding the "non-violent intermediate offender": The judge may impose a deferred sentence, or impose an indeterminate sentence with the D.O.C. *Id.* at § 995.3(B). If the later option is taken a rehabilitation plan is filed by the D.O.C. within ninety (90) days after sentencing. This report includes an assessment of "security risks and offender needs and a specific course of action, including, where applicable, psychological counseling, psychiatric treatment, medical treatment, education or vocational training, work, restitution, and such other programs, which will offer the best opportunity for rehabilitation of said offender." *Id.* at 995.3(B). If no objections to the plan are filed by the District Attorney or the offender, the plan is automatically deemed approved by the trial court. If an objection is filed, the trial court shall conduct a hearing, and either approve or reject the plan. *Id.* All updated plans must go through the same procedure.

Once the offender is placed with the D.O.C., that agency has broad powers under the act to place the offender with various institutions within and without the D.O.C., or grant the offender a supervised probation. *Id.* at §§ 995.4, 995.7. If the D.O.C. seeks to transfer an offender from probation to confinement, it must "provide an appropriate due process hearing and administrative appeal procedure." *Id.* at § 995.5. At any time prior to the offender's twenty-second birthday, the trial court may, upon recommendation from the D.O.C., discharge the offender from custody. *Id.* at § 995.8. At the age of twenty-two, the trial court may discharge the offender, set a determinate sentence, giving credit for time already served under the NIO Act, or order the offender to continue under the NIO Act for an additional two years. *Id.* at § 995.9.

## II.

In his three-fold challenge to the constitutionality of this act, the appellant first contends that the NIO Act is unconstitutional due to the statute's mandate in 22 O.S.Supp.1984, § 995.3 that, in the appellant's terms, the trial judge "ignore the jury's assessment of punishment." *Brief of Appellant* at 6. "This ... provision of the statute renders [the Act] unconstitutional because it expressly conflicts with an Oklahoma Defendant's right under 22 O.S. 1981, § 926 to have a jury assess his punishment." *Id.*

We addressed, and rejected, a similar argument in *Wood v. State*, 557 P.2d 436 (Okl.Cr.1976). In *Wood*, we considered a challenge to 21 O.S.Supp.1973, § 701.4,[2] which required the trial court to "set an indeterminate sentence [of not less than ten (10) years nor more than life] ... on a finding of guilty by the jury of murder in the second degree." The defendant in *Wood* argued the statute was unconstitutional "for the reason that it deprives a defendant of his right to have the jury assess punishment." *Id.* at 443. In rejecting this claim, a unanimous court held

[u]nder Article II, Section 19 of the Oklahoma Constitution, as amended, the right of a trial by jury remains inviolate. However, the Constitution does not require that the jury, once issues of fact have been presented to it and it has determined that an accused it [sic] guilty of the crime charged, must assess punishment. As stated in 23A C.J.S. Criminal Law § 1141, where the fine or period of imprisonment is fixed by law, it is usually for the court and not for the jury to assess it unless such power is conferred on a jury by constitutional or statutory provision. In Oklahoma a defendant's right to have a jury assess punishment is a matter of statute, 22 O.S. § 926 and § 927.

It should also be noted that in the syllabus of the Court in *Burtt v. State*, 64 Okl.Cr. 68, 77 P.2d 580 [1938], this Court held that § 927, which permits the trial court to assess punishment when the jury fails to do so, is not unconstitu-

---

2. This statute has since been repealed.

tional as depriving a defendant of his right to trial by jury.

*Id.* at 444.

■ Appellant, however, questions the validity of the above reasoning, and attempts to fashion a constitutional right to jury sentencing from the U.S. Supreme Court's decision in *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). We disagree with appellant's assumption that *Hicks* has application to the NIO Act, so as to render the Act unconstitutional on this basis. Contrary to appellant's assertion, *Hicks* did not establish a constitutional right to a jury's assessment of punishment; rather, *Hicks* states that due process is offended if an accused is arbitrarily deprived of a right granted by state statute.[3] *Id.* at 346, 100 S.Ct. at 2229. "[T]he extent of [an] appellant's constitutional right to be sentenced by a jury turns on the extent to which the Oklahoma state legislature has created such a right." *Drennon v. Hess,* 642 F.2d 1204, 1205 (10th Cir.1981). The decision whether to establish, expand, or limit such a statutorily created right is purely within the authority of the Legislature. It is only when such a right has been established by the Legislature, and then is subsequently abrogated in an improper manner by state officials, that federal due process is offended. *Accord Drennon v. Hess, supra.* This allegation is therefore without merit.

### III.

Appellant also asserts that the NIO Act denies him the equal protection of law, as guaranteed by the Fourteenth Amendment to the Federal Constitution. We are not persuaded that the NIO Act is unconstitutional on this basis.

■ In analyzing the constitutionality of a statute under the equal protection clause, the U.S. Supreme Court has developed a two tiered test: First, the Court has held that "equal protection analysis requires strict scrutiny of a legislative classification ... when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). Classifications subjected to strict scrutiny will be upheld only if they are substantially related to an extremely important or compelling end of government. If the classification does not invoke analysis under the strict scrutiny tier, the legislation is then analyzed under the "rational relationship test." Under this approach, a legislative classification "must be reasonable, nor arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). In short, the challenged classification must be "rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). Under this second tier, "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Danridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

The classification challenged in this case is defined by 22 O.S.Supp.1984, § 995.1(1) of the NIO Act as those persons "eighteen (18) through twenty-one (21) years of age convicted of a nonviolent offense or a juvenile who has been certified to stand trial as an adult and who is convicted of a nonviolent offense." The term, "nonviolent offense," is defined at 22 O.S.Supp.1984,

---

**3.** The jury in *Hicks* had fixed punishment at forty (40) years imprisonment, in accord with the habitual criminal offender statute then in effect. On appeal, this Court agreed with appellant's contention the act was unconstitutional, but determined the forty year sentence was within the range of punishment that a correctly instructed jury could have imposed. This Court therefore affirmed the sentence. The Supreme Court, however, held that the deprivation of a discretionary jury sentence that could have been less than forty years denied Hicks due process of law. *Hicks, supra* 447 U.S. at 346, 100 S.Ct. at 2229.

§ 995.1(2). Appellant claims this classification invokes strict scrutiny analysis, in that it violates his fundamental and constitutional right to due process of law. Due process is violated in three ways, according to appellant: *First,* the appellant is denied his right to plea bargain under the provisions of the NIO Act. *Second,* the NIO Act subjects the appellant to a potentially harsher sentence than a person convicted of a like offense, but not within the NIO classification, or the appellant may receive a harsher punishment for his nonviolent act than another defendant convicted of a violent offense. *Third,* the procedures used when transferring a probationer to confinement are fundamentally unfair.

■ Regarding the first challenge, we have previously held that no "right" to plea bargain exists under the Oklahoma or Federal Constitutions. *Gray v. State,* 650 P.2d 880, 882 (Okl.Cr.1982). Therefore, no fundamental right has been violated by this denial. Nor does the potential for harsher punishment invariably deny due process so as to violate a fundamental right. The goal of the NIO Act is rehabilitation. The young offender is placed with the D.O.C. for rehabilitation, rather than punishment, and a rehabilitation plan is prepared and submitted to the Court. 22 O.S.Supp.1984, § 995.3(B). The Department is required to update this plan to meet the changing needs of the offender. *Id. See also* 22 O.S.Supp.1984, § 995.7. Although incarceration and/or probation may be greater than for a similarly convicted offender not falling within the parameters of the act, *see* 22 O.S.Supp.1984, § 995.9(C)(2), an offender to whom the Act applies may be discharged more rapidly than other offenders. 22 O.S. 1984 Supp., § 995.8. Furthermore, although a nonviolent intermediate offender may, upon his twenty-second birthday, be sentenced to a determinate sentence, his time served under the NIO Act is applied to the determinate sentence. 22 O.S.Supp. 1984, § 995.9(C)(2). Throughout the NIO

treatment, an offender is to receive the "psychological counseling, psychiatric treatment, medical treatment, education or vocational training, work, [and/or] restitution" necessary to accomplish his rehabilitation. 22 O.S.Supp.1984, § 995.3(B). Due process is not offended when the basis for enhanced confinement or dissimilar treatment is rehabilitation, and not punishment. *Accord Rogers v. United States,* 326 F.2d 56 (10th Cr.1963). *Cf. Deason v. State,* 576 P.2d 778, 783, (Okl.Cr.1978) (upholding the use of Indeterminate Sentence Act, 57 O.S. 1981, § 353, against a similar constitutional challenge.) Finally, we reject appellant's claim that the procedures utilized in revoking probation are fundamentally unfair so as to deny due process. The challenged statute recites that the D.O.C. "shall provide an appropriate due process hearing and administrative appeal procedure when transferring an offender from probation to confinement." 22 O.S.Supp. 1984, § 995.5. An alleged due process violation is not concrete until actual prejudice is demonstrated. *Accord Green v. State,* 713 P.2d 1032, 1036 (Okl.Cr.1985). The challenged statute provides for a due process hearing and appeal, and we refuse to declare these procedures improper absent a showing that due process is not provided by the D.O.C. to these probationers.

Having determined that the classification created by the NIO Act does not violate a fundamental right, we evaluate the Act under the rational relationship test, as explained above.

■ The Supreme Court stated that under the rational relationship test, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Although the Act itself names no stated purpose,[4] rehabilitation is the obvious basis for the Act, as that theme is repeated throughout the body of the text. That rehabilitation of youthful

---

**4.** *Amicus Curiae* briefs filed by State Rep. Stephen C. Lewis, the author of the NIO Act, and State Rep. James E. Hamilton, Chairman of the House Corrections and Penal Affairs Committee, both cite rehabilitation as the underlying purpose of the Act.

offenders is an important and legitimate state interest cannot be denied.[5] Statistics reveal that 20.8% of the adult arrests in 1984 were attributed to young people aged 18 to 21.[6] Of the nearly 40,000 arrests for burglary, larceny, and motor vehicle theft during the same period, 11.2% were of persons aged 18 to 21.[7] Nearly 11% of those incarcerated with the Oklahoma Department of Corrections are aged between 18 and 21.[8] In order to attempt in some way to ease this situation, the NIO Act requires individual treatment plans for youthful nonviolent offenders, including psychological, medical, educational, and vocational treatment or training. *See* 22 O.S.Supp. 1984, § 995.3(B); 22 O.S.Supp.1984, § 995.-7. We hold the NIO Act bears a rational relation to a legitimate state interest.

### IV.

 Nevertheless, despite the meritorious—and otherwise constitutional—purposes of the NIO Act, we are compelled to agree with the appellant that the Act violates the separation of powers provision found in Okla. Const. art. IV, § 1, and is unconstitutional on that basis.

Our constitution provides that the authority of state government shall be divided into the legislative, executive, and judicial departments, and that each "shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others." *Id.* "[I]t is the duty of each [branch of government] to abstain from and oppose encroachments on another." *In re Opinion of the Judges,* 25 Okl. 76, 105 P. 325 (1909).

### A.

 The most noticeable infringment by the NIO Act on the separation of powers doctrine is found in an issue not addressed by either party, or in the briefs filed by the various *amicus curiae.* Title 22 O.S.Supp. 1984, § 995.8 provides:

At any time prior to the date the offender becomes twenty-two (22) years of age, the Department of Corrections may recommend to the court that he be discharged from the custody of said Department. Upon notice to the court of a recommendation to discharge the offender, the court shall set a hearing for the purpose of determining whether the offender should be discharged. If possible said hearing shall be held by the judge who originally sentenced the offender. The appropriate district attorney shall be given notice and afforded an opportunity to object and present evidence or argument in opposition to the proposed discharge. Upon proper hearing, the court shall either order the offender discharged or to remain in the custody of the Department of Corrections.

In Oklahoma, the discretionary power to discharge an offender who is otherwise under a lawful sentence rests exclusively with the Governor. *See* Okla. Const. art. VI, § 10. Any statute attempting to place this power in the hands of another branch of government is unconstitutional. *See Ex parte Swain,* 88 Okl.Cr. 235, 202 P.2d 223, 226 (1949) Accordingly, in *Ex parte Boyd,* 73 Okl.Cr. 441, 122 P.2d 162 (1942), we ruled that the power to parole is exercised solely by the Governor, and, after distinguishing parole from probation,[9] held it

---

**5.** The *Amicus Curiae* brief of the Department of Corrections asserts that "at least eleven (11) other states, the District of Columbia, and the Federal System have similar laws for youthful non-violent offenders." *Brief of Department of Corrections* at 2.

**6.** Crime in Oklahoma, *1984 Uniform Crime Reports.*

**7.** *Id.*

**8.** This statistic is provided by the Department of Corrections. *See Amicus Curiae Brief of the Department of Corrections* at 3.

**9.** Parole is a discretionary act of the Governor which releases a person from jail, prison or other confinement, after actually serving a part of the sentence. Probation, on the otherhand, relates to judicial action taken before the prison door is closed, and is part of the sentence imposed. Our opinion today does not invalidate programs administered by the D.O.C. in which

error for a District Court to order an accused released on parole. Furthermore, the power to recommend parole or pardon rests exclusively with the five-member Pardon and Parole Board. Okla. Const. art. VI, § 10. *See In re Keith,* 482 P.2d 942, 945 (Okl.Cr.1971). *Cf. Ex parte Ridley,* 3 Okl.Cr. 350, 106 P. 549 (1910) (attempt by first Legislature, prior to amendment in 1944 of the constitution, to establish a Pardon and Parole Board held an unconstitutional infringement on the power of the Governor).

Under the purported authority of 22 O.S. Supp.1984, § 995.8, the D.O.C. is empowered to recommend, and the District Court to grant, immediate discretionary discharge of an offender from his current sentence. The discretionary discharge of a sentence is a matter solely for the Governor, upon recommendation from the Pardon and Parole Board. *Accord Coburn v. Schroeder,* 71 Okl.Cr. 405, 112 P.2d 191 (1941). Hence, 22 O.S.Supp.1984, § 995.8 is improper.

### B.

We also find the NIO Act unconstitutional under the separation of powers doctrine on a second basis. The NIO Act provides that if an offender is sentenced to an indefinite sentence, "[w]ithin ninety (90) days after sentencing, the [D.O.C.] shall prepare and file.... a rehabilitation plan for said offender." 22 O.S.Supp.1984., § 995.3(B).[10] Once the plan is filed, "either the district attorney or the offender ... may file his written objections with the court within ten (10) days ..." *Id.* If objections are filed, the District Court must "set a hearing and either approve or reject the plan", *id.,* apparently without change. "If no objections

are filed within ten (10) days ..., the plan shall be deemed approved by the court." *Id.* Appellant argues this statutory scheme improperly delegates to the D.O.C, the power to establish the rules and conditions of probation. We agree.

The State and the various *amicus curiae* all contend that the rehabilitation plan is merely a recommendation to the Court. We do not accept this theory. Under this statute, the Court is *required* to accept the D.O.C. plan, if no objections are entered. Even if objections are entered, only the D.O.C. may amend the plan, not the court. And, once the amended plan is filed without objection, the court is obligated to accept it. The plan filed by the D.O.C. is certainly something greater than a mere recommendation; it is a plan the court cannot change, and eventually will be forced to accept. Only if the Court could amend and then approve the plan, would the rehabilitation study truly be a mere recommendation.

■ The State and *amicus curiae* also argue that the power to authorize suspension of sentences is vested with the Legislature. Certainly, probation is a power created by statute, and may be withheld from certain catagories of crime. *See Ex parte Boyd, supra,* and *Davis v. State,* 521 P.2d 422 (Okl.Cr.1974). *But see Black v. State,* 509 P.2d 941, 943–44 (Okl.Cr.1973) (Brett, J., dissenting) (power to suspend is one inherent in the judiciary). However, once the power to sentence to probation is granted by the legislature, "[i]t is the sole authority and responsibility of the court imposing a suspended sentence to set forth the terms and conditions governing such

the Legislature has determined that certain meritorious acts by a convict provide basis for an early release. These programs provide for mandatory, not discretionary, reduction of a sentence, and may be considered part of the sentence rather than a subsequent elective amendment to the sentence requiring action by the Governor. *See In re Keith,* 482 P.2d 942 (Okl.Cr. 1971)

**10.** This provision of the statute was amended during the last session of the Legialature in House Bill No. 2029 [to be condified at 22

O.S.Supp.1985, § 995.3(B) ], which was passed as an emergency measure and signed by the Governor on March 13, 1986. The new measure makes two changes in the Act: First, it requires that the rehabilitation plan "include imput from the sentencing court", and, second, that the offender's attorney be permitted to file objections to the plan. However, the appellant herein was not sentenced under the revised measure and the effect of these revisions to the constitutionality of the Act will not be considered at this time, as the issue is not properly before the Court.

suspension [sic]," and, "the Court cannot delegate its responsibility to state the terms and conditions of suspension." *In re Collyar,* 476 P.2d 354, 356, 357 (Okl.Cr. 1970). Title 22 O.S.Supp.1984, § 995.3(B) violates the separation of powers doctrine on this basis as well.

### V.

We have searched the statute to discover whether a severability provision was appended to the Act by the Legislature. However, we are forced to conclude that the Legislature failed to provide for severability. Accordingly, we declare *The Nonviolent Intermediate Offender Act,* codified at 22 O.S.Supp.1984, §§ 995.1 *et seq., unconstitutional.* This cause is remanded to the District Court of Tulsa County for resentencing in accordance with valid Oklahoma law.

REVERSED.

BRETT, J., specially concurs in part.

BUSSEY, J., dissents.

BRETT, Judge: specially concurs in part.

I concur in Part IV and Part V, of this opinion. I believe all the early part is dictum and unnecessary to resolve this matter.